UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | CIVIL ACTION NO: |
| | § | 3:05-CV-0761-B |
| COASTAL PLAINS, INC. | § | (Consolidated with: |
| | § | 3:05-CV-0773-B |
| Debtor. | § | 3:05-CV-0774-B |
| | § | 3:05-CV-0799-B |
| INDUSTRIAL CLEARINGHOUSE, INC., | § | 3:05-CV-0815-B) |
| et al., | § | |
| | § | |
| APPELLANTS, | § | |
| | § | |
| | § | |
| V. | § | |
| | § | |
| JEFFREY MIMS, individually | § | |
| and as Trustee of the Estate of Coastal | § | |
| Plains, Inc., | § | |
| | § | |
| APPELLEE. | § | |
| | § | |
| | § | |
| | § | |

## MEMORANDUM ORDER

Before the Court is a consolidated appeal by Industrial Clearinghouse, Inc. ("Industrial"), Coastal Plains, Inc. ("Coastal Plains"), R. Wayne Duke ("Duke"), Dallas Valve and Instrument Company ("Dallas Valve"), and Intercontinental Bearing Company ("Intercontinental"), collectively "Appellants," from a final judgment and related orders of the bankruptcy court. Having conducted plenary review of the bankruptcy court's judgment, the Court **AFFIRMS** that judgment for the following reasons.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

**A.  The Coastal Plains Bankruptcy**

This appeal results from appellant Coastal Plains's filing of Chapter 11 bankruptcy. (Appellants' Brief at 14)  In 1985, Coastal Plains, a vendor and distributor of industrial parts, was experiencing financial problems and employed the law firm of Jackson Walker, L.L.P. to help the company formulate a restructuring plan.  (*Id.* at 13)  Integral to this plan was a transaction with Coastal Plains's largest supplier, Browning Manufacturing, in which Coastal Plains would sell its inventory back to Browning and then reacquire the inventory on a consignment basis.  (*Id.* at 14) Browning breached this agreement by refusing to pay for the returned inventory and refusing to provide the promised consignment inventory.  (*Id.*)  Because of this, Coastal Plains filed for bankruptcy on April 22, 1986.  (*Id.*)

Jackson Walker also represented Coastal Plains during the course of its Chapter 11 proceeding.  (Appellants' Brief at 14)  Shortly after filing for bankruptcy, Coastal Plains filed an adversary proceeding against Browning, pleading causes of action for breach of contract, conversion, and tortious interference (the "Browning claims") and requesting injunctive relief as well.  (*Id.* at 15) The court ordered Browning to return the inventory to Coastal Plains but did not rule on the other claims.  (*Id.*)

On June 6, 1986, Coastal Plains filed its Schedules and Statement of Financial Affairs that Jackson Walker had helped prepare, but the claims against Browning were not listed.  (Appellants'

---

[1]  The background facts are derived from Appellants' Brief, Appellee's Brief, and on undisputed facts gleaned from the parties' court papers and corresponding attachments.  Where there may be a dispute over a stated fact the Court has so indicated by claiming the fact as one stated by that party to be true.

Brief at 16)  In September 1986, Westinghouse Credit Corporation ("Westinghouse"), which had a super-priority lien on Coastal Plains's property, requested that the court lift the automatic stay and allow it to foreclose on Coastal Plains's assets.  (*Id*.)  In mid-September, Jackson Walker entered a Stipulation of Facts for Coastal Plains which again made no mention of the Browning claims.  (*Id*.)  The company's general intangible assets were stated as worth less than $20,000.  (*Id*.)  In early October, Westinghouse foreclosed on the assets of Coastal Plains and bought them in the foreclosure sale.  (*Id*. at 17)

Meanwhile, in September 1986, Jackson Walker began to represent the liquidating agent for Coastal Plains's assets--Industrial.  (Appellants' Brief at 17)  R. Wayne Duke was the CEO of both Coastal Plains and Industrial.  (*Id*.)  Industrial questioned Jackson Walker about how to ensure its acquisition of the Browning claims when it purchased the assets of Coastal Plains from Westinghouse; Jackson Walker, however, neglected to advise the company to identify the claims in the bankruptcy proceeding or to take any other action to preserve an interest in the claims.  (*Id*.)  Industrial then purchased Coastal Plains's assets from Westinghouse, including, it believed, the Browning claims.  (*Id*.)  Because Coastal Plains retained no assets after this series of purchases and would not have been able to reorganize under Chapter 11, Jackson Walker moved to dismiss the bankruptcy case in early January 1987.  (*Id*.)  Instead of dismissing the case, the bankruptcy court chose to convert the proceeding into a Chapter 7 bankruptcy and appointed a trustee.  (*Id*.)

**B.  Adjudication of the Browning Claims**

A trial on the Browning claims was set for May 1993 in federal district court; however, it was postponed by the intervention of Coastal Plains's trustee, claiming that the Coastal Plains bankruptcy estate owned the claims against Browning.  (Appellants' Brief 18)  The district court then referred

the case back to the bankruptcy court for a determination of the ownership of the Browning claims. (*Id*.)   In May 1994, the bankruptcy court ruled that Industrial owned the contract claims against Browning and that the trustee owned the tort claims.   (*Id*.)   Industrial and the trustee then entered into a court-approved sharing agreement under which Industrial would receive 85% of any recovery against Browning while Coastal Plains's estate would receive 15%.   (Appellants' Brief at 18; Appellee's Brief at 9)  In 1995, the trustee resigned and Jeffrey Mims (the "Trustee"), the current trustee, was appointed as his successor.   (R. 588)

With ownership of the Browning claims squared away, in March 1996 the parties went to trial on the Browning claims back in the district court.  (Appellants' Brief at 18)  Industrial and the estate of Coastal Plains won a large jury verdict, which was later reduced by the district court.   (*Id*. at 18-19)  A judgment was entered against Browning.   (*Id*. at 19)  On appeal, the Fifth Circuit reversed the district court and rendered a judgment in favor of Browning based upon the doctrine of judicial estoppel.   (*Id*. at 19)   Industrial and the estate of Coastal Plains were estopped from recovering against Browning because the Browning claims were not listed in either the bankruptcy schedules or the Stipulation of Facts, and the bankruptcy court relied on this representation in lifting the stay and allowing Westinghouse to foreclose on the assets of Coastal Plains.   (*Id*.); *In re Coastal Plains, Inc.*, 179 F.3d 197, 208-10 (5th Cir. 1999).   In light of *Coastal Plains*, Appellants believed that Jackson Walker had committed malpractice in failing to disclose the Browning claims in the bankruptcy filings.  (Appellants' Brief at 10)  Sometime after January 2000, the Trustee met with Duke and counsel for Industrial to discuss ownership of the potential claim against Jackson Walker and how pursuit of that claim might progress.  (Mims Dep. at 59-61, R. 695-696)  No agreement was reached at that meeting.  (Mims Dep. at 63-64, R. 696)

4

C.  **The Closing of the Bankruptcy Estate**

In March 2000, Mims filed the Trustee's final report and proposed distribution of assets of the estate, applied for compensation, and requested that the bankruptcy case be closed.  (R. 205) The court then gave notice of the filing and set a deadline for objections to the fee application and proposed distribution.  (R. 859)  In June, the bankruptcy court approved the Trustee's fees and the proposed distribution of the assets.  (R. 205)  Shortly thereafter, Duke filed an amended Schedule B-2 listing the Jackson Walker claim as an asset of the bankruptcy estate with an unknown value. (R. 511)  The court discharged the Trustee and closed the bankruptcy case on December 12, 2000. (R. 205)  Appellants did not object to either the fee order or the closing order, and both orders became final.  (*Id.*)

D.  **The Instant Case Against the Trustee**

The Coastal Plains bankruptcy case spawned additional related litigation, including the case at bar - creating a somewhat convoluted procedural history.  Appellants [2] originally filed this suit against the Trustee in Texas state court in November 2004 for breach of fiduciary duty and negligent breach of fiduciary duty.  (Appellants' Brief at 11)  Appellants allege that the Trustee refused to administer their potential malpractice claim against Jackson Walker and attempted to prevent anyone else from pursuing the claim by "trapping" it in the estate.  (Appellants' Brief at 10-11) Appellants also maintain that the Trustee was a fiduciary of the estate and that it was part of his fiduciary duty to pursue claims of the estate, including the Jackson Walker claim, for the estate's creditors.  (*Id.* at 30, 35)  The Trustee denies Appellants' allegations of wrongdoing, stating that he

---

[2]"Appellants" refers to Industrial, Coastal Plains, Duke, Dallas Valve and Intercontinental.

5

consulted with his own attorney as well as Appellants' attorney, "reviewed the legal malpractice claim, made an affirmative decision not to pursue the claim, [and] indicated on the Trustee's Final Report that it had a value of zero." (Appellee's Brief at 9-10)  The Trustee asserts that his evaluation of and decision not to pursue any potential claims against Jackson Walker constitute full administration of those claims.  (*Id.*)

On December 3, 2004, the Trustee filed a Notice of Removal removing the suit from state court directly to bankruptcy court in the Northern District of Texas.  (Appellants' Brief at 11)  Post-removal, the Trustee filed a motion for judgement on the pleadings and to dismiss Appellants' case on numerous theories, including res judicata.  (*See* R. 616.)  On December 16, Appellants filed their Notice Under Bankruptcy Rule 9027(e)(3), claiming that their case against the Trustee was a non-core proceeding and declining to consent to final orders or judgment by the bankruptcy judge.  (R. 622)  Appellants also responded to the Trustee's Notice of Removal with Plaintiffs' Motion for Remand and Plaintiffs' Motion to Strike the Removal.  (*See* R. 76, 80.)  Next, the Trustee filed a Motion to Strike Plaintiffs' Notice Under Bankruptcy Rule 9027(e)(3) on the grounds that it was untimely filed on the 13th day after his filing of the Notice of Removal with the bankruptcy court.  (R. 664)  Appellants followed with a Motion for Partial Summary Judgment seeking a judgment that the Jackson Walker Claim had been abandoned by the Trustee.[3]  (R. 674-76)  The Trustee answered by filing a Cross-Motion for Summary Judgment, alleging, *inter alia*, that Appellants' claims were barred by the doctrine of res judicata.  (R. 748)

---

[3]Although the bankruptcy court denied the motion, it did not explain its reasoning in its memorandum order entered on March 11.  However, the issue of abandonment was addressed by the bankruptcy court in a related case in late 2004, and at the time of the bankruptcy court's denial of the Motion for Partial Summary Judgment, the court's ruling in the related proceeding was before this Court on appeal.

The bankruptcy court held a hearing on all the pending motions on February 17, 2005. On March 11, 2005, the court issued a memorandum opinion containing its findings of fact and conclusions of law determining, *inter alia*, that Appellants' claims were barred by res judicata. *See Industrial Clearinghouse v. Mims* (*In re Coastal Plains*), 126 B.R. 102, 109 (Bankr. N.D. Tex. 2005). The bankruptcy court also found that Appellee's removal of the case from the state court directly to bankruptcy court was proper and accordingly denied Appellants' Motion to Remand and Motion to Strike Notice of Removal. *See id.* at 109. In addition, the court granted Appellee's Motion to Strike Plaintiffs' Notice Under Bankruptcy Rule 9027(e)(3) reasoning that, as an action against the bankruptcy trustee for breach of fiduciary duty, it constituted a core proceeding over which the bankruptcy court had subject matter jurisdiction. Finally, the bankruptcy court found that the "Barton Doctrine" required dismissal of the case because the Appellants had failed to seek the bankruptcy court's permission before filing suit in state court. *See id.* The memorandum opinion was accompanied by four orders consistent with the opinion and a judgment in favor of the Trustee. With this background, the Court turns to the appeal at issue.

Appellants raise twelve issues on appeal which they have divided into five categories. First, Appellants seek a review of whether the removal from the state court directly to the bankruptcy court was proper or whether the bankruptcy court erred in denying their motions challenging that removal. (Appellants' Brief at 7-8) Second, Appellants argue that the bankruptcy court erred in holding that the doctrine of res judicata barred their claims. (*Id.*) Third, Appellants contend that the court should have granted their Motion for Partial Summary Judgment on the ground of abandonment of the Jackson Walker claim. (*Id.*) Fourth, Appellants argue that their Notice Under Bankruptcy Rule 9027(e)(3) was timely and should not have been stricken. (*Id.* at 9, 32) Finally, Appellants assert

7

that application of the Barton Doctrine was error because that doctrine has not been adopted by the Fifth Circuit. (*Id.* at 9, 33)  Because the first and second grounds relating to the propriety of removal from state court and res judicata are dispositive of this appeal, the Court does not reach the other issues raised by Appellants.

## II.  LEGAL STANDARD

Final judgments, orders, and decrees of a bankruptcy court may be appealed to a federal district court.  28 U.S.C.A. § 158(a)(1) (1994 & Supp.  2005); Fed. R. Bankr. P. 8001(a).  The district court functions as an appellate court and applies the same standard of review used by federal appellate courts when reviewing the decisions of district courts.  *Webb v. Reserve Life Ins. Co.* (*In re Webb*), 954 F.2d 1102, 1103-04 (5th Cir. 1992).  A district court shall only set aside a bankruptcy court's findings of fact if they are clearly erroneous and shall also acknowledge the bankruptcy court's opportunity to evaluate the credibility of the witnesses.  Fed. R. Bankr. P. 8013.  "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Webb*, 954 F.2d at 1104 (quoting *Anderson v.  City of Bessemer*, 470 U.S. 564, 573 (1985)).  When resolving questions of law or mixed questions of law and fact, the district court reviews the bankruptcy court's conclusions *de novo.  EOP-Colonnade v.  Faulkner* (*In re Stonebridge Technologies, Inc.*), 430 F.3d 260, 265 (5th Cir. 2005).

## III.  ANALYSIS

**A.  The Bankruptcy Court Did Not Err in Denying Plaintiffs' Motion to Strike Notice of Removal & Plaintiffs' Motion to Remand.**

Appellants argue that the bankruptcy court erred in upholding the direct removal of this case

from the state court to the bankruptcy court. (Appellants' Brief at 20) They contend that a party cannot bypass a district court when removing a case from state court. (Appellants' Brief at 20) In addressing this issue, the bankruptcy court determined that the removal was proper finding the term "district court" in the removal statute equally applicable to bankruptcy courts as units of the district court and that standing referral orders, as permitted by 28 U.S.C. § 157(a), allow bankruptcy-related cases to be directly removed from state court to the bankruptcy court. *Industrial Clearinghouse*, 326 B.R. at 107-108.

Removal of a civil action related to a bankruptcy case is governed by 28 U.S.C. § 1452 which provides:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C.A. § 1452(a) (1994 & Supp. 2005).

Federal courts are split on the proper interpretation of the removal statute. Section 1452 was enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Act") to replace the prior removal statute, 28 U.S.C. § 1478. Congress passed the 1984 Act in response to the Supreme Court's opinion in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, which held the Bankruptcy Act of 1978 unconstitutional because it endowed non-Article III bankruptcy judges with Article III powers. 458 U.S. 50 (1982). The only relevant difference in wording between the old statute and the current removal statute is that "district court" now appears in § 1452(a) where "bankruptcy court" used to appear in § 1478(a). 28 U.S.C.A. § 1478(a) *repealed by*

Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353 (1984); 28 U.S.C.A. § 1452(a).

The minority view is that the term "district court" means just what it says and should be interpreted as being exclusive of the bankruptcy court. *See Doyle v. Mellon Bank*, 307 B.R. 462 (E.D. Pa. 2004); *Sharp Elec. Corp. v. Deutsche Fin. Servs. Corp.*, 222 B.R. 259 (D. Md. 1998); *Cornell & Co., Inc. v. Southeastern Pennsylvania Transp. Auth. (In re Cornell & Co., Inc.)*, 203 B.R. 585 (Bankr. E.D. Pa. 1997); *Centrust Sav. Bank v. Love*, 131 B.R. 64 (S.D. Tex. 1991). Although Appellants contend that these cases are applicable here, under a close reading, the actual issue being decided in many of these cases is whether a case can be "removed" from the federal district court to the bankruptcy court. *E.g., Doyle*, 307 B.R. at 463; *Centrust*, 131 B.R. at 65. Any discussion of removal from state courts in these cases is dicta. *See Doyle*, 307 B.R. at 463; *Centrust*, 131 B.R. at 65.

The majority of federal courts, on the other hand, allow state cases to be removed directly to the bankruptcy court without first being routed through the district court. *See AG Indus., Inc. v. AK Steel Corp. (In re AG Indus., Inc.)*, 279 B.R. 534 (Bankr. S.D. Ohio 2002); *Eyecare of S. California v. Urrea (In re Eyecare of S. California)*, 258 B.R. 765 (Bankr. C.D. Cal. 2001); *Lone Star Indus., Inc. v. Liberty Mut. Ins.*, 131 B.R. 269 (D. Del. 1991); *Citicorp Sav. of Illinois v. Chapman (In re Chapman)*, 132 B.R. 153 (Bankr. N.D. Ill. 1991); *In re Boyer*, 108 B.R. 19 (Bankr. N.D.N.Y. 1988); *Aztec Indus., Inc. v. Standard Oil Co. (In re Aztec Indus., Inc.)*, 84 B.R. 464 (Bankr. N.D. Ohio 1987); *Gianakas v. Exch. Nat'l Bank of Chicago (In re Gianakas)*, 56 B.R. 747 (N.D. Ill. 1985). The primary bases for the decisions of these courts are an expanded definition of the term "district court" and the practicality of not requiring an additional, unnecessary step in the removal process.

The majority relies on the notion that § 1452(a) cannot be viewed in isolation. This court

finds the majority's contextual approach persuasive. Courts must look at § 1452(a) in the context of other provisions in the Judicial Code and Federal Rules of Bankruptcy Procedure which also govern the activities of the bankruptcy courts and the removal of bankruptcy-related cases. When Congress reconstructed the jurisdiction of the bankruptcy courts with the 1984 Act, it made those courts "a unit of the district courts" and classified bankruptcy judges as "judicial officer[s] of the district court". 28 U.S.C.A. § 151 (1994 & Supp. 2005). In addition, Congress enacted a provision allowing the district courts to refer "any or all proceedings arising under Title 11, or arising in or related to a case under Title 11" to the bankruptcy judges sitting in their district. 28 U.S.C.A. § 157(a) (1994 & Supp. 2005). Both of these statutes reinforce the current placement of the bankruptcy courts in the federal judicial scheme as a subset of federal district courts that derive their jurisdiction from the primary branch of the district court. *Gianakas*, 56 B.R. at 752.

In accord with this reasoning, the Court finds that the change in wording of the removal statute from "bankruptcy court" to "district court" did not signal a change in the procedure for filing a notice of removal. Rather "the wording change merely reflects the fact–expressed in §§ 151 and 157–that the 'bankruptcy court' as such no longer exists as a distinct jurisdictional entity, but is subsumed within 'the district court' apparatus." *Id.* Hence, removing a case to a bankruptcy court is the functional equivalent of removing it to the federal district court under § 1452(a).

This conclusion accords with the procedures set forth in the Bankruptcy Rules. For example, Bankruptcy Rule 9027 instructs litigants as to the proper process for removal: "A notice of removal shall be filed with the clerk for the district and division within which is located the state or federal court where the civil action is pending." FED. R. BANKR. P. 9027(a). The term "clerk" is defined as "bankruptcy clerk, if one has been appointed, otherwise clerk of the district court." FED. R. BANKR.

11

P. 9001(3). Therefore, under the bankruptcy rules, a party wishing to remove its case to bankruptcy court may file it with the bankruptcy clerk rather than the clerk of the district court. The language of these rules could not be much clearer. Both Rule 9027 and Rule 9001 have been amended three times since the passage of the 1984 Act, however they still direct parties to file notices of removal with the clerk of the bankruptcy court so long as one has been appointed. Reading 28 U.S.C. § 1452 together with its procedural counterpart, Rule 9027, reinforces the conclusion that § 1452 and the rest of the 1984 Act were meant to resolve constitutionally-based jurisdictional problems and not to change the method of or procedure for removal of bankruptcy-related cases from state court.

In short, for all of the foregoing reasons, this Court finds that Appellee's removal efforts complied with the requirements of 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027.[4] The bankruptcy court did not err in finding direct removal to the bankruptcy court to be proper. Accordingly, the bankruptcy court's denial of Plaintiffs' Motion to Strike Notice of Removal and Plaintiffs' Motion to Remand is affirmed.

## B. The Bankruptcy Court Did Not Err in Ruling That Appellants' Claims Were Barred by Res Judicata and Entering Judgment for Appellee.

Appellants also complain that the bankruptcy court erred in finding that their claims were barred by res judicata. In its opinion, the bankruptcy court found that the determination of the

---

[4] This conclusion does not appear to veer from any Fifth Circuit authority on the issue of removal directly from state court to bankruptcy court. In *In re Kevco, Inc.,* the court addressed the issue of whether direct removal of a bankruptcy-related case from a state court to the wrong division of the Bankruptcy Court for the Northern District of Texas required remand to the state court. *Pam Capital Funding LP v. Nat'l Gypsum Co.* (*In re Kevco*), 113 Fed. Appx. 29, 31 (5th Cir. 2004). Noting that "[r]emoval to the wrong division is procedural, not jurisdictional", the *Kevco* court did not object to the bankruptcy court's exercise of jurisdiction on direct removal. Instead it merely found removal to the wrong division of the bankruptcy court to be a harmless procedural error.

Trustee's fees towards the end of the Coastal Plains bankruptcy case in 2000 and the facts of the present case against the Trustee were centered upon the same nucleus of operative fact: "the value and nature of the Trustee's services." *Industrial Clearinghouse*, 326 B.R. at 110.  Because the two proceedings share the same nucleus of operative facts, the court found that the same cause of action was involved in both of them and held that Appellants' claims of breach of fiduciary duty and negligent breach of fiduciary duty were barred by res judicata. *Id.* at 109.  In addition, the bankruptcy court held that the instant claims against the Trustee should have been brought at the time of the fee determination because Appellants "had more than a general awareness of the potential for claims" and a fee application hearing would have been an effective forum in which to address those claims. *Id.* at 110-11.

The doctrine of res judicata bars claims that have already been litigated as well as claims that "could and should" have been brought in an earlier proceeding.  *Osherow v. Ernst & Young, LLP* (*In re Intelogic Trace, Inc.*), 200 F.3d 382, 388 (5th Cir. 2000).  For a claim to be barred by res judicata, four factors must be present: "the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases."  *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir. 1983) (en banc) (quoting *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir. 1979)).  Here, Appellants contend that there was no final judgment on the merits with regard to the closing order issued by the bankruptcy court.  Appellants also argue that their breach of fiduciary duty and negligent breach of fiduciary duty claims against the Trustee do not constitute the "same cause of action" as the bankruptcy court's determination of his fees in 2000, so the claims have not previously been litigated and Appellants should not be barred from pursuing

them.  (Appellants' Brief at 23-32)

The Fifth Circuit has not articulated an exact standard for determining when an order by the court in a bankruptcy proceeding constitutes a final judgment on the merits.[5]  Because of this, it is necessary for the Court to look to another context in which the Fifth Circuit has provided a clear standard for determining the finality of an order in a bankruptcy case:  finality for the purposes of appeal.  This Circuit treats bankruptcy court orders differently than orders in most civil cases because of the unique procedural posture of bankruptcy cases.  For purposes of determining the finality of a bankruptcy order, each matter that arises between the filing of the bankruptcy petition and the issuing of a closing order is treated as a separate proceeding.  *Smith v. Revie (In re Moody)*, 817 F.2d 365, 367-68 (5th Cir. 1987).  A "final" order in a bankruptcy case can be any order that "ends a discrete judicial unit in the larger case."  *Id.* at 368.  It is logical to apply this same standard of finality for the purposes of res judicata, especially considering that the Federal Rules of Bankruptcy Procedure define "judgment" as "any appealable order."  FED. R. BANKR. P. 9001(7).  The First Circuit takes this approach, allowing any bankruptcy court order that "'completely resolve[s] all of the issues pertaining to a discrete claim'"  to satisfy the res judicata requirement of a final judgment on the merits.  *Iannochino v. Rodolakis (In re Iannochino)*, 242 F.3d 36, 43 (1st Cir. 2001) (quoting *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc., (In re Integrated Res., Inc.)*, 3 F.3d 49, 53 (2d Cir. 1993)).

---

[5]  Closing orders are, of course, final judgments on the merits.  The Fifth Circuit also has provided examples of other bankruptcy court actions that may be considered final judgments for the purposes of res judicata.  Orders allowing or confirming a partial sale of the bankruptcy estate and orders allowing a creditor's proof of claim are considered final judgments on the merits "'even though the order neither closes the bankruptcy case nor disposes of any claim.'" *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736, 742 (5th Cir. 1993) (quoting *Hendrick v. Avent*, 891 F.2d 583, 586 (5th Cir. 1990)).

Appellants incorrectly focus their efforts on disputing the finality of the closing order issued by the bankruptcy court on December 12, 2000. The applicable order for the purposes of res judicata is the Court's June 2, 2000, Order Approving Final Account & Report Granting Application for Compensation (the "Fee Order"). The Fee Order satisfies the final judgment on the merits requirement because it is a final judgment on the value of the Trustee's services to the estate, and it ends the fee determination unit of the larger bankruptcy case. Thus, the Fee Order is considered a "final judgment" on the merits despite the later reopening of the bankruptcy case.

Appellants also challenge the bankruptcy court's finding of an identity of claims between the present case and the fee determination by the bankruptcy court in the Coastal Plains bankruptcy case. In deciding whether a case involves the same cause of action as a previous proceeding, courts within the Fifth Circuit employ the transactional test to determine whether the two actions "are based on 'the same nucleus of operative facts.'" *Intelogic Trace*, 200 F.3d at 386 (quoting *Howe v. Vaughan* (*In re Howe*), 913 F.2d 1138, 1144 (5th Cir. 1990)). Appellants' causes of action for breach of fiduciary duty and negligent breach of fiduciary duty and the bankruptcy judge's determination of the Trustee's fee award are all based upon the same nucleus of operative facts: the acts and omissions of the Trustee during his representation of the Coastal Plains bankruptcy estate. Both proceedings appraise the quality and value of the Trustee's services and examine the beneficial or detrimental effects that his acts or omissions had upon the bankruptcy estate.

The Fifth Circuit addressed the issue of identity of claims in *In re Intelogic Trace*, the facts of which are highly analogous to this case. *Intelogic Trace*, 200 F.3d at 386-88. *Intelogic Trace* involved malpractice claims brought by a bankruptcy trustee against Ernst & Young, the accounting firm that assisted Intelogic Trace ("IT") during its Chapter 11 bankruptcy. *Id.* at 384. The trustee brought

15

many claims against Ernst & Young, alleging that the firm's failure to contact customers about prepaying their accounts with IT led to flawed financial projections and ultimately to the company filing for Chapter 11 bankruptcy a second time. *Id.* at 385. The Fifth Circuit affirmed the holdings of the bankruptcy and district courts that the trustee's claims were barred by res judicata because the trustee's concerns about the firm's performance should have been brought while the court was considering Ernst and Young's fee application. *See id.* The Fifth Circuit found that the "central transaction" in both cases was the services Ernst & Young rendered to the estate during its Chapter 11 reorganization. *Id.* at 387. It further explained that a professional fee award "represents a determination of 'the nature, the extent, and the value of such services.'" *Id.* (quoting 11 U.S.C. § 330(a)(3)). Similarly, the Trustee's services to the Coastal Plains estate comprise the central transaction in this case and in the bankruptcy court's fee determination. The bankruptcy judge determined that the Trustee's actions on behalf of the bankruptcy estate benefitted the estate and were of some value when it chose to grant his request for a fee award. The conclusion in *Intelogic Trace* can be extended to the present case because the negligence and breach of fiduciary duty claims brought by Appellants against the Trustee here are analogous to the malpractice claims brought against professionals employed by the bankruptcy estate in *Intelogic Trace*.

Finally, once the four elements required for the application of res judicata have been satisfied, the key question is whether the claims *could or should* have been brought as a part of the prior proceedings. To determine whether the claims could or should have been brought, this Court must decide whether: 1) Appellants had "actual or imputed awareness" at the time of the fee determination "of a real potential for claims" against the Trustee of the same type currently being asserted; and 2) "whether the bankruptcy court possessed procedural mechanisms" through which

16

Appellants could have pursued their claims against the Trustee.   *Intelogic Trace*, 200 F.3d at 388. Here, any concerns about the Trustee's acts or omissions definitely should have been brought as an objection to his fee application.

At the time the bankruptcy court was considering the Trustee's fee application, Appellants were aware that Mims was not pursuing claims against Jackson Walker and that he was requesting the bankruptcy court's approval of final distributions so that he could close the estate.   On March 13, 2000, the bankruptcy court gave notice that the Trustee's fee application had been filed and set a deadline for objections.   (R. 859)   The Appellants, however,  failed to object to the Trustee's fee application, and they made no complaints about his treatment of the Jackson Walker claim or about any of his other actions on behalf of the bankruptcy estate.   The only response was Appellant Duke's June 9, 2000 filing of an amended Schedule B-2 listing the Jackson Walker claim as an unliquidated action with an unknown value.   (*See* R. 511.)   Had Appellants objected, the quality of the Trustee's services and his decision with regard to the Jackson Walker claim at the very least would have been made a contested matter, but more than likely it would have been converted into an adversary proceeding, allowing the court the opportunity to consider the actions or inactions of the Trustee that Appellants found problematic.   The *Intelogic Trace* court found that a fee hearing can provide an effective forum in which to address malpractice claims against professionals who rendered service to the bankruptcy estate.   *Intelogic Trace*, 200 F.3d at 390.   Likewise, a fee hearing would have been an effective forum in which Appellants could have pursued their claims against the Trustee had they taken the initiative to object to the Trustee's fee application.   Appellants' failure to do so or otherwise complain to the bankruptcy court about the Trustee's actions in a timely manner forecloses them from attempting to pursue those claims four years after the fact just because those claims have not

17

been previously litigated.  Appellants' breach of fiduciary duty and negligence claims *should* have been brought in 2000 when the Trustee's fee award was being determined by the court, so they are barred from pursuing those claims now by the doctrine of res judicata.  Holding otherwise would leave trustees open to creditors' claims after the court has already approved their service.

Appellants imply that they could not have brought a claim against the Trustee while the bankruptcy case was still open because Duke thought that the filing of a final report and the entry of a closing order would result in the bankruptcy estate's abandonment of the Jackson Walker claim. (Appellants' Brief 30)  However, the law of the Fifth Circuit does not require a party to have understood the legal implications of the facts giving rise to a claim in order for the claim to be barred by res judicata.  *See In re Howe*, 913 F.2d at 1147 (finding lender liability plaintiffs' "ignorance an inadequate excuse for the failure to raise their claims in the earlier proceedings").  In *Intelogic Trace*, the court only required a "sufficient general awareness of the real potential for claims" and barred the company's claims against their accounting firm even though "the Board may not have been aware of the precise facts or reached a firm conclusion on Ernst & Young's performance." *Intelogic Trace*, 200 F.3d at 389.  Although the facts of the present case are not as extreme as those of *Intelogic Trace*, this Court reaches the same conclusion.  Appellants knew or should have known after the Trustee filed his fee application and final report that he had no intention of further pursuing the potential malpractice claim against Jackson Walker.  Appellants did not need to understand the ramifications of the Trustee's inaction to know that they did not think he was doing his job by not taking action against Jackson Walker.  This is the concern they should have raised to the court in response to the Trustee's fee application.

In light of the foregoing discussion, the Court finds that the bankruptcy court did not err in

holding that Appellants' claims are barred by res judicata.  Because the bankruptcy court correctly found that Appellants' fiduciary duty claims are barred, the Court need not address the remainder of Appellants' issues on appeal, which focus on the merits of Appellants' fiduciary duty claims and the procedures used to bring them.  Therefore, the bankruptcy court's grant of summary judgment and judgment on the pleadings in favor of Appellee is affirmed.

## IV.  CONCLUSION

For the reasons discussed herein, the bankruptcy court's orders and judgment entered on March 11, 2005 are **AFFIRMED**.  The appeal of Industrial, Coastal, Duke, Dallas Valve, and Intercontinental is **DENIED** in its entirety.

SO ORDERED.

SIGNED March 7th ,  2006

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

19